IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

ALEX COLEMAN,
    Plaintiff,

v.

UNITED STATES OF AMERICA,
    Defendant.

Case No. 23-cv-01852-RMR-KAS

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
FEB 08 2024
JEFFREY P. COLWELL
CLERK

## NOTICE OF FILING: CERTIFICATE OF REVIEW

COMES NOW, Alex Coleman, Plaintiff, *pro se*, and respectfully Notifies this Honorable Court that the Certificate of Review attached hereto and the original Certificate of Review that was sent directly to the Clerk of this Court by Dr. Marketta Roberts is hereby submitted for filing on the record.

On January 11, 2024, the Honorable Magistrate Judge Kathryn A. Starnella granted the Plaintiff a period up to and including January 28, 2024 in which to file a Certificate of Review in the above styled civil action. (R.23)

The Plaintiff notes for the record that the extension of time allowed by the Court was the result of the Plaintiff's Motion for an Extension (R.19) wherein he stated for the record that a Certificate of Review was being prepared for submission in this matter.

In an abundance of caution, the Plaintiff requested Doctor Marketta Roberts of Miramont Behavioral Health to mail a copy of the Certificate of Review conducted by her office directly to this Court in order to assure the document was placed on the record before January 28th. Accordingly, the Certificate of Review was sent to the Clerk of this Court via certified mail no. 70222 4100 0016 2415 979.

The Plaintiff further notes that the original Certificate of Review was executed with Dr. Roberts' original signature and date.

Dated: 2/1/2024

Respectfully submitted,

*Alex Coleman*
Alex Coleman 28929-009 F-Unit
Federal Correctional Institution
P.O. Box 7000
Texarkana, TX 75505

CERTIFICATE OF MAILING AND SERVICE

I hereby certify under penalty of perjury that a true and correct copy of the foregoing has been placed in the Institutional Legal Mail System, appropriate postage prepaid and addressed to:

Office of the Clerk
United States District Court
901 19th Street, Room A105
Denver, CO 80294-3589

U.S. Department of Justice
Office of the AUSA
1801 California Street, Suite 1600
Denver, CO 80202

on this, the  1  day of  Feb.  , 2024.

*[signature]*
Affiant

I, Marketta Roberts, DNP am a licensed and board-certified Doctor of Nursing in Family Practice. I am currently employed as a Chief Nursing Officer (CNO) for a behavioral health facility. I have over twenty-three years of experience in hospital emergency care. During my focus in emergency care, I also supplemented my experience with surgery, orthopedics, cardiology, pulmonology, radiology, neurology, behavioral health, and other specialties. I am knowledgeable in reading radiography and EKGs. I currently serve as lead on the emergency response team where I am employed and was appointed as disaster triage for my previous employer's hospital disaster preparedness plan. My experience also includes collaborating with other licensed medical professionals and supervising nursing staff. I evaluate, diagnose, and treat numerous medical disease processes. I feel my experience is relative in this matter of the claim of failure to provide adequate medical care by the medical staff at FCI Englewood while in their custody.

I have reviewed the documents provided as it relates to the initial and subsequent responses and transfer of care. The document states on the day of April 12, 2017, Alex Coleman 28929-009 experienced a syncopal episode at said time of 11:00 a.m. while performing a physical workout routine. He was said to have regained consciousness after a few minutes. This initial presentation alone, without knowledge of Mr. Coleman's medical history warrants at the least, an in-person evaluation, assessment, ekg, vital signs for hemodynamic stability (cardio-pulmonary stability) and oxygen saturation within 5-10 minutes. This includes a pulse check, an in-person auscultation of the heart tones for anomalies, auscultation of lung fields for adventitious sounds, and an assessment of the patient's skin for color (normalcy, paleness, blueness, purple discoloration), and/or the absence/presence of moisture or diaphoresis. As in any instance of loss of consciousness, a responders first responsibility is to perform a focused assessment of A-B-C; airway, breathing, and circulation., As in BLS (Basic Life Support) accredited by the American Heart Association this assessment is to be done within 10 seconds rather it be by a person with a medical background or lay person who is BLS certified. What is found in the focus ABC assessment entails what is to follow; at the very minimum calling for help.

Alex Coleman noted chest pain described as feeling like an elephant sitting on his chest, shortness of breath, heavy chest pressure, and dizziness while taking a shower. This was reported to the Correctional Officer. Officer D'Acci spoke with Nurse Masterson in the medical department and advised that the nurse declined to evaluate Mr. Coleman and suggested that he 'drink some water and lay down".

Many pertinent keywords were mentioned in Mr. Coleman's complaint and should have been alarming to Nurse Masterson. Once the complaint of symptoms was made, as I wrote above an in-person evaluation of Mr. Coleman's condition would have provided further direction for the medical team. I first want to mention that a patient experiencing chest pain, shortness of breath, and syncope should not be advised to drink water until evaluated. It was documented in the patient's medical records he has a history of seizures. Give the possibilities of differential diagnoses such as pneumonia, seizure, myocardial infarction, congestive heart failure, pulmonary emboli, pericardial effusion, pneumothorax, stroke, abdominal aortic aneurysm, or a brain tumor to name a

few; drinking water would put him at risk for aspiration and delay in care, treatment, or even perhaps surgery. Again, had the medical team responded early it may have been noted that he was found to be hemodynamically unstable and had acquired abnormal lung sounds which was documented in his medical records. The abnormal lung sounds could have resulted from drinking water or his presenting condition. Without a proper initial evaluation, one cannot attest to what his lungs sounded like prior to encouraging him to drink. He was also found to have an abnormal EKG on arrival to the emergency department. This also could have been an early determining factor to transfer him out in a timely manner.

 Mr. Coleman went back to his cell after drinking water as instructed and it was reported that his previous symptoms continued, and new symptoms ensued to abdominal pain. Hours passed and as reported between the times of 7:00 p.m. and 8:00 p.m. Mr. Coleman vomited in his cell, had another syncopal episode, and was unconscious for approximately 5 minutes. This is where he likely aspirated on the water. His condition became increasingly alarming. Adding vomiting and abdominal pain to his symptoms heightens concern for aspiration, an abdominal mass, or an abdominal aortic aneurysm along with the previous differentials. Mr. Coleman's cellmate who became alarmed by the sequence of events "ran" to the correctional officer's station and reported the events. It was 8-9 hours later; Mr. Coleman was moved to a cell in the medical department for observation by untrained staff members and no medical persons presents. A second attempt was made by Lt. Hess to contact the on-call medical provider. The medical provider further delayed Mr. Coleman's emergent treatment by refusing to evaluate him after giving the medical staff a second opportunity. He was again poorly advised to drink water, rest, and make sick call the next morning.

 Persistently, Mr. Coleman's symptoms were worsening with nausea, dizziness, and abdominal pain leaving him in the care of his cellmate to pound on the cell door if he deteriorated. As documented at 9:45 p.m. Mr. Coleman had a third syncopal episode proceeded by vomiting. Altered mental status and tongue injury resulted during the third syncopal episode. A third report was made resulting in Mr. Coleman being transported to the hospital. It was documented that the paramedics found the patient to be unstable with shortness of breath, wheezing, and a low oxygen level. It was documented there was no medical personnel on the premises. I note this to be a system failure that requires immediate attention.

 I have reviewed Mr. Coleman's hospital medical records which includes progress notes, labs, radiography reports, and nurse notes from Denver Health in which he was properly evaluated and treated in the Emergency Department later to be transferred to the Medical Intensive Care Unit. His medical records reveal he had an abnormal physical exam. He suffered a fourth syncopal episode which continues to lend to the severity of this case, hypoxia, a massive pulmonary embolus, bilateral deep vein thrombosis, right-sided heart strain, and hemodynamic instability.

 In my professional opinion, the Englewood correctional facility was afforded multiple opportunities to perform their due diligence by providing the emergent intervention that Mr. Coleman desperately required. The medical staff did not respond to several key symptoms that prompts a medically trained person to act responsibly. Mr. Coleman was at an extreme high risk of death. Due to the prolonged delay in care and lack of adequate tissue oxygenation he has suffered some long-term effects. He will require

long-term anti-coagulants, genetic studies, routine follow up with cardiology for damage to his heart as evidenced by documented hypoxia, right-sided heart strain, and an abnormal ekg that also depicted hypoxia and a pulmonary embolus. He will require routine follow up with a neuro-vascular surgeon for tissue and vessel damage to the lower extremities evidenced by swelling and vessel occlusion (clotting). He will also require follow up with pulmonology for lung tissue disease as a result of the pulmonary embolus.

   In this same situation, normal standards of care would have been carried out by performing an immediate physical in-person evaluation, vital signs with an oxygen level reading, an ekg and transfer to a higher level of care for chest pain, shortness of breath, syncope, and an abnormal physical exam. If you take in to account his risk factors, such as age, race, gender, family history (blood clots), previous nicotine use, and personal medical history he is at higher risk that the average person in the community with no risk factors.


This concludes the certificate of review.


Thank you for allowing me to serve you.


Marketta Roberts, DNP, FNP-C



Alex Coleman #28929-009
Texarkana FCI Federal Correctional Institution
Inmate Mail / Parcels
PO Box 7000
Texarkana TX 75505

MILWAUKEE WI 530
17 JAN 2024 PM 7 L

Miramont Behavioral Health
3169 Deming Way
Middleton, WI 53562

MAIL ROOM
FCI-TEXARKANA, TEXAS-75505-9500
Date: 1/25/24

The enclosed letter was processed through a special mail procedures for forwarding to you. The letter has been neither opened nor inspected. If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer encloses correspondence for forwarding to another addressee, Please return the enclosure to the above address.

Office of the Clerk
United States District Court
901 19th Street, Room A105
Denver, CO 80294-3589

February 01, 2024

Re:   Alex Coleman v. United States, 23-cv-01852-RMR-KAS

Dear Sir/Madam:

Please find the following documents enclosed:

- One (1) Original: Notice of Filing: Certificate of Review
- One (1) extra copy of the first page of same.

With regards to these documents, the following is being requested of your office:

1.   Please file this pleading with the Court in the above styled case.

2.   Please stamp the extra first page "filed" and return it to the undersigned in the self-addressed, stamped envelope that has been provided for your convenience.

Thank you for your attention to this request, your assistance is greatly appreciated.

Respectfully,

Alex Coleman 28929-009 F-Unit
Federal Correctional Institution
P.O. Box 7000
Texarkana, TX 75505



Alex Coleman 28929-009 F-Unit
Federal Correctional Institution
P.O. Box 7000
Texarkana, TX 75505

9589 0710 5270 1462 9065 48

Office of the Clerk
United States District Court
901 19th Street, Room A105
Denver, CO 80294-3589

CERTIFIED MAIL